IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TOMMY ROBINSON,<br><br>  Plaintiff,<br><br> v.<br><br>UNKNOWN NAME PERSON IN CHARGE,<br>  CORIZON HEALTH CARE,<br>BRENDA REESE,<br>DR. BERNARD McQUILLAN,<br>DR. PAUL GOODMAN,<br><br>  Defendants. | Civil Action No.: DKC-19-2997 |

**MEMORANDUM OPINION**

On August 25, 2020, Plaintiff Tommy Robinson filed a motion for injunctive relief (ECF No. 43), which he supplemented (ECF No. 44). In addition, Mr. Robinson filed a response to this court's Order denying his motion to appoint counsel and granting him until September 30, 2020, to file his response to the pending motions to dismiss or for summary judgment filed by each of the Defendants. ECF Nos. 45 & 46.[1] Defendants have each filed a response to Mr. Robinson's motion. ECF Nos. 47, 48, 50 & 51. Defendants Corizon Health and Brenda Reese filed a motion for leave to file a surreply in opposition to Mr. Robinson's pending motion for injunctive relief (ECF No. 36) filed prior to the current, similar motion. ECF No. 49. The court now rules on these motions.

In the first motion titled "motion for court order," Mr. Robinson asserts he cannot read the prison commissary forms because Dr. Goodman refuses to help correct his blurry vision. ECF No. 36 at 1-2. He requests that this court require Dr. Goodman to prescribe new assistive technology

---

[1] ECF Nos. 45 and 46 are identical in content.

such as a "portable magnifier" because he has been denied the surgery he requires to correct his blurred vision. *Id*. at 3-4.

In the initial responses to Mr. Robinson's motion, Defendants assert that Mr. Robinson was provided with new glasses on February 12, 2020, and the optometrist recommended the addition of a handheld magnifier after Mr. Robinson complained that his vision remained blurry even with the new glasses. ECF No. 38-1 at 3, citing ECF No. 27-1 at 384-5. The handheld magnifier was determined to be a security risk by correctional staff and Mr. Robinson was not permitted to have it. ECF No. 38-1 at 3, ¶10. Mr. Robinson's complaints of blurry vision were to be addressed after the COVID-19 restrictions on optometry appointments are lifted. *Id*. at ¶¶9-10. Defendants contend that the request for injunctive relief should be denied because they do not have the authority to override decisions regarding security.

Mr. Robinson filed a reply indicating that Dr. Getachew, who provided a declaration stating that the handheld magnifier was found to be a security risk, lied about the reason for failing to provide the assistive device. ECF No. 42. Rather, Mr. Robinson contends that he has been provided magnifying glasses before and he was permitted by correctional staff to have it. *Id*. at 3-4, ¶ 17. He seemingly relies on this past practice, as well as the fact that other Caucasian inmates have received cataract surgery, as absolute proof that he is denied the required assistive device for nefarious reasons. *Id*. at 3, ¶¶ 12-13. He continues to assert that he cannot see well enough to engage in daily personal hygiene and to avoid tripping on anything left on the floor. *Id*. at ¶ 16.

In their proposed surreply, Defendants Brenda Reese and Corizon Health assert that Mr. Robinson has failed to demonstrate that security decisions made by correctional staff may be overridden by medical providers. ECF No. 49-1 at 2. Defendants point out that Mr. Robinson's evidence demonstrates that he purchased pre-approved magnifying glasses but does not

2

demonstrate that other types of magnifying glasses are approved or do not pose a threat to security. *Id*. They further contend that Mr. Robinson is not qualified to offer sworn testimony about his medical conditions, nor may he offer his own diagnoses given the fact that he lacks the education and training to do so. *Id*. at 3. Mr. Robinson also includes statements and allegations that his poor vision has caused him to injure himself, but those statements are belied by the medical records which document no injuries resulting from his lack of visual acuity. *Id*. Based on these asserted deficiencies, Defendants contend that Mr. Robinson is not entitled to the "court order" he seeks by his motion.

In his second motion for injunctive relief, Mr. Robinson states that he is "a blind man with serious medical problems that has left him in pain & dying." ECF No. 43 at 1. He claims he contracted the COVID-19 virus, wrote sick call slips seeking medical attention, and despite the fact he was "very sick," his requests were ignored. *Id*. He adds that he "pulled thru by luck and the use of his c-pap machine providing the oxygen needed to offset the bad virus." *Id*. He maintains, however, that he is now experiencing some after-effects of the virus including memory loss, inability to concentrate, dizziness, pain in his eyes, swollen legs, and bleeding skin. *Id*. at 2. In addition, Mr. Robinson states that the pain in his neck, back, and right hip has made him unable "to do any kind of work." *Id*.

Mr. Robinson also accuses the "defendants" of enlisting the assistance of "a nurse name Burnice Swan [to] make up lies to stop [his] pain medication in retaliation because [Mr. Robinson] had to write her up for refusing to order a new c-pap." *Id*. According to Mr. Robinson, Ms. Swan "became angry and promised to get even with [him] and got her chance when she notice[d] plaintiff was receiving pain medication." *Id*. He claims that she made up lies to stop his pain medication in January of this year. *Id*.

Mr. Robinson asserts that it is necessary for this court to order Corizon and Dr. Getachew, who is not a party to this case, to give him "pain shots, medication for his headaches, and appoint a[n] attorney to represent plaintiff in this case." ECF No. 43 at 2. In Mr. Robinson's opinion, the only way the harassment will stop is if this court appoints an attorney to represent him. *Id*. He adds that he needs "a cat scan of his brain, and lungs to see how the virus has damaged his organs" because his health has worsened. *Id*. at 3.

Defendants oppose Mr. Robinson's second request for injunctive relief and state that the relief should be denied because it pertains to matters unrelated to the claims asserted in the complaint (ECF No. 47 at 2, Brenda Reese's opposition) and because Mr. Robinson cannot demonstrate the required elements entitling him to an award of injunctive relief (ECF No. 48 at 4-5, Dr. McQuillan's opposition); ECF No. 50 at 2-3, Dr. Paul Goodman's opposition). Mr. Robinson's complaint concerns his allegations that his right to discuss his medical issues privately was violated on April 26, 2019, when Defendant Reese spoke with a physician about his case and refused to allow Mr. Robinson to receive an MRI on his right hip (ECF No. 1 at 3; ECF No. 4 at 3); that Dr. McQuillan failed to prescribe appropriate pain medication and allowed his heart medication to expire or lapse (*id*.); and that Dr. Paul Goodman failed to provide appropriate ophthalmological care (*id*.).

A preliminary "injunction is drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 166 (2010), *see also SAS Institute, Inc. v. World Programming Lmtd*, 874 F.3d 370, 385 (4th Cir. 2017) (satisfying four-prong test is "a high bar, as it should be."). A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the

4

balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009). As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group,* 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994).

Mr. Robinson's repetitive motions seeking this court's intervention into medical care decisions based solely on his unsupported, subjective views of his medical conditions and his belief that Defendants are simply engaging in race discrimination when they deny his requests are without merit and must be denied. Mr. Robinson, who is no stranger to litigation in this court, continues his attempts to widen the issues involved in this case to include medical complaints that arose long after this complaint was filed. The institution of a civil rights complaint does not imbue this court with the authority, or the expertise, to require particular medical decisions to be implemented for Mr. Robinson's treatment. His complaint that he is denied a magnifying glass is clearly an issue which he must take up with correctional staff through the use of the administrative remedy procedure; as medical staff and these Defendants did not make the decision to deny it. Further, Mr. Robinson's insistence that he must be provided with particular medical tests based on his own opinions and flawed conclusions drawn from the false equivalencies he makes between himself and other inmates is simply not sufficient to warrant this court's intervention. The preliminary injunction must be denied both because Mr. Robinson's claims are unlikely to succeed and because the harm he claims will befall him is, at best, remote and speculative.

Mr. Robinson also takes umbrage with the court's prior orders denying the appointment of counsel and complains that he will not be able to comply with the September 30, 2020, deadline for responding to Defendants' motions to dismiss or for summary judgment. ECF No. 46 at 2. Despite his protests, Mr. Robinson has managed to file numerous motions with supporting exhibits responsive to the allegations raised by Defendants. The court has seen no evidence that Mr. Robinson requires assistance of counsel to litigate the claims raised in this case, which has been made more complex by the number of motions filed by Mr. Robinson. To the extent he seeks additional time to file his response to Defendants' motion to dismiss or for summary judgment, the court will grant Mr. Robinson an additional brief period of time in which to file his opposition. His motions are otherwise denied.

A separate order follows.

September 25, 2020                  _____/s/_____
                                    DEBORAH K. CHASANOW
                                    United States District Judge